UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| RANDY DUTTON, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-13-1339-HE ) |
| CAROLYN W. COLVIN,
Acting Commissioner of the Social
Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

Plaintiff Randy Dutton brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.[1] United States District Judge Joe Heaton has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 9, hereinafter "R._"). The parties have briefed their positions, and the case is now ready for decision. For the reasons discussed below, it is recommended that the Commissioner's decision be AFFIRMED.

---

[1] Plaintiff initially also applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. R. 106-09. Plaintiff did not seek reconsideration of the initial denial of his DIB claim and does not challenge the Administrative Law Judge's characterization of his claim as one for Title XVI benefits only. R. 9, 21, 45.

## PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his application for SSI on February 15, 2011. R. 9, 110-18. Plaintiff alleged a disability onset date of November 27, 2010, and sought benefits on the basis of a broken neck from a motor vehicle accident. R. 110, 126, 130. Following denial of his application both initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 19, 2012. R. 19-41, 42-49, 52-67. Plaintiff, represented by counsel, appeared and testified at the hearing, as did a nonparty vocational expert. R. 22-41. The ALJ issued an unfavorable decision on August 24, 2012. R. 9-14.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920; R. 9-11. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 15, 2011, the date that Plaintiff filed his SSI application. R. 11; *see* 20 C.F.R. §§ 416.335, .971. At step two, the ALJ determined that Plaintiff had the severe impairment of status post cervical fracture. R. 11-12; *see* 20 C.F.R. § 416.920(c). At step three, the ALJ determined that Plaintiff's impairment did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 12; *see* 20 C.F.R. § 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of Plaintiff's impairments. R. 12-14; *see* 20 C.F.R. § 416.920(a)(4)(iv). The ALJ found that Plaintiff has the RFC "to perform the full range of medium work." R. 12; *see*

20 C.F.R. § 416.967(c); SSR 83-10, 1983 WL 31251, at *6 (1983). Relying on the vocational expert's hearing testimony, the ALJ determined that Plaintiff retained the RFC to perform both his past relevant work as a telephone installer and other jobs that exist in significant numbers in the national economy, such as electronic assembler, semiconductor assembler, or electronic apprentice. R. 14; *see* 20 C.F.R. §§ 416.960(b)-(c), .965. On that basis, the ALJ concluded that Plaintiff had not been under a disability for purposes of the Social Security Act at any time since February 15, 2011. R. 14; *see* 20 C.F.R. § 416.920(a)(4)(iv), (f), (g).

The SSA Appeals Council denied review, rendering the ALJ's determination the Commissioner's final decision on Plaintiff's SSI application. R. 1-4; 20 C.F.R. § 416.1481. Plaintiff timely commenced this appeal.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the

administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff's severe impairment of a cervical spine fracture was the result of a motor vehicle accident on November 27, 2010. R. 31, 126, 220-22. Immediately after the accident, Plaintiff was treated by Timothy Puckett, MD, and other medical personnel at OU Medical Center and had a "halo" traction device placed on his neck and head. R. 31, 216-22. Dr. Puckett removed the halo device at Plaintiff's request in January 2011, and Plaintiff was fitted with a soft-collar device. R. 31-32, 199-206. In April 2011, Plaintiff underwent spinal fusion surgery by Dr. Puckett, after which he again wore a soft collar. R. 253-59. Plaintiff returned for several follow-up visits to Dr. Puckett, but by August 2011 Plaintiff was instructed to return on an as-needed basis. R. 260-65. On August 3, 2011, Dr. Puckett completed a Cervical Spine Medical Source Statement ("MSS"), in which he answered questions regarding Plaintiff's impairments, limitations, treatment, and other issues relating to Plaintiff's cervical fracture. R. 323-27.

In the written decision, the ALJ discussed the medical evidence reflecting Plaintiff's treatment by Dr. Puckett and gave Dr. Puckett's MSS "great[] weight" in formulating Plaintiff's RFC—i.e., in determining that Plaintiff retained the capability to

4

perform medium-exertion work at all skill levels. R. 11-12, 14. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). In addition:

> A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. . . . .
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping[.] (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10, 1983 WL 31251, at *6. The ALJ found that Plaintiff would "experience difficulties from time to time in certain work situations, but certainly not to the degree alleged." R. 13.

On appeal, Plaintiff asserts that the ALJ improperly picked and chose among portions of the MSS in questioning the vocational expert at the hearing and in formulating the RFC. Plaintiff argues that because the ALJ afforded great weight to the opinion of Plaintiff's treating physician Dr. Puckett, the ALJ was required to adopt each and every limitation purportedly assessed by that treating physician. *See* Pl.'s Br. (Doc.

5

No. 11) at 2-4. Plaintiff does not contend that the ALJ failed to follow the required two-step procedure for assigning weight to a treating physician opinion. *See id.* at 3-4; *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). Rather, Plaintiff's argument is that the ALJ's failure to indiscriminately adopt Dr. Puckett's assessment resulted in an RFC determination that is not supported by substantial evidence. *See* Pl.'s Br. at 2-4. The undersigned therefore applies the substantial-evidence standard outlined above. *See supra*; *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)).

Plaintiff is generally correct that an ALJ "may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). Here, however, close evaluation of each of the allegedly rejected limitations of Dr. Puckett's MSS demonstrates that the ALJ did not so err and that the RFC as a whole is supported by substantial evidence in the record.

- *Plaintiff's Limited Range of Motion*

In completing the fill-in-the-blank MSS form, Dr. Puckett checked "Yes" to the question of whether Plaintiff had significant limitation of motion and opined that Plaintiff's cervical range of motion ("ROM") was between 50-70% of the normal range in certain listed categories, which is a "substantial decrease in ROM." R. 323, 324; *see* R. 32-33 (Plaintiff testifying that he regained some motion on his right side but cannot

6

turn his head to the left). Plaintiff objects that the RFC fails to include Dr. Puckett's finding that Plaintiff had limited cervical ROM, which "is error." Pl.'s Br. at 4.

In the written decision, the ALJ specifically discussed Dr. Puckett's opinion as to Plaintiff's reduced ROM in his cervical spine. *See* R. 12. The ALJ then considered the ROM findings, together with the other medical evidence and testimony, in reaching his RFC determination regarding Plaintiff's functional limitations. *See* R. 12-14. Plaintiff cites no authority for the proposition that reduced cervical spine ROM, by itself, precludes Plaintiff from being capable of medium-exertion work as such work is defined above. *See supra*; *cf. Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988) ("The mere fact that [claimant] was diagnosed as suffering from major depression does not automatically mean that he is disabled."). Nor does Plaintiff identify any functional limitations associated with a diminished ROM that would prevent him from performing medium work. Reversal is not warranted on this basis. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (rejecting argument that ALJ failed to properly consider obesity where claimant did not cite other areas impacted by obesity, the RFC was supported by medical evidence that took claimant's obesity into account, and claimant did not identify any factual or legal errors compelled by the ALJ's characterization of the obesity as "mild").

Moreover—and relevant to all of Plaintiff's arguments regarding Dr. Puckett's MSS—if the ALJ had adopted the MSS wholesale as advocated by Plaintiff on appeal, the MSS considered *in toto* supports the ALJ's finding that Plaintiff could perform medium-exertion work. Dr. Puckett noted Plaintiff's limited cervical ROM, but also

7

opined that in a competitive work situation Plaintiff could sit or stand for "[m]ore than two [h]ours" "at one time" and could sit and stand/walk for "at least" six hours total in an eight-hour work day. R. 325 (emphasis omitted); *see* SSR 83-10, 1983 WL 31251, at * 6 (defining medium work to "require[] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday"). Dr. Puckett found that Plaintiff needed a job that permitted shifting at will and periods of walking around but also found that Plaintiff did not need unscheduled breaks or an assistive device. R. 325-26. Further, Dr. Puckett opined that Plaintiff could "[f]requently" lift and carry 50 pounds, look up/down/right/left or hold head in static position, twist, stoop, crouch/squat, climb ladders, and climb stairs. R. 326; *see* SSR 83-10, 1983 WL 31251, at *6 (defining medium work to require "frequent bending-stooping"). Dr. Puckett opined that Plaintiff did not experience chronic pain and that Plaintiff had stiffness and "mild" headaches but did not have severe headaches associated with impairment of his cervical spine. R. 323-24. Finally, Dr. Puckett opined that Plaintiff could walk an "unrestricted" number of city blocks without rest or severe pain, that Plaintiff suffered no significant limitations with reaching/handling/fingering, and that while Plaintiff is likely to have "good days" and "bad days," Plaintiff would "[n]ever" be absent from work due to impairments or treatment. R. 325, 326, 327; *see* SSR 83-10 (noting that "[u]se of the arms and hands is necessary to grasp, hold, and turn objects" for medium work, in contrast to the "precision use of the fingers as well as use of the hands and arms" for much sedentary work). Plaintiff has not shown that adoption of Dr. Puckett's opinion in full would preclude the ALJ properly finding that Plaintiff was capable of a full range of medium work.

- *Plaintiff's Headaches*

As noted by the ALJ, Plaintiff testified that he suffers from headaches as a result of the November 2010 accident but that he treats the headaches with over-the-counter Tylenol, which "ma[de] them tolerable." R. 12, 33-34; *see also* R. 187 (Plaintiff reporting that he takes no prescription medication). The medical evidence reflects that Plaintiff "was taking Tylenol and very little narcotics for pain control" shortly after the accident but Plaintiff had no complaints of headaches on his visits to Dr. Puckett following the April 2011 spinal fusion surgery, in April, June, July, or August of 2011. *See* R. 216, 260, 262, 264, 265.

Plaintiff contends that Dr. Puckett's MSS found "headaches [that] required a dark room and the ability to take a break from work to take medications." Pl.'s Br. at 4. The MSS actually stated that Plaintiff had "mild" daily headaches that lasted approximately all day but were made better by taking medication and being in a dark room. The MSS did not state that a dark room, medication, or breaks to take medication were "required" as a working condition. *See* R. 324. Rather, the MSS found that Plaintiff would *not* need unscheduled breaks, that Plaintiff's symptoms would be severe enough to interfere with his attention and concentration "0%" of the time, and that Plaintiff would "[n]ever" miss work due to his impairments or treatment. R. 325, 327. Plaintiff inaccurately characterizes Dr. Puckett's opinion, and, when considered in context, that opinion does not reflect that Plaintiff's headaches would prevent him from performing medium-exertion work. Reversal is not warranted on this basis.

- *Plaintiff's Need to Shift Positions*

Plaintiff argues on appeal that Dr. Puckett stated in the MSS that Plaintiff needed a job that permitted shifting positions at will and walking around during the work day, and that the ALJ erred by failing to include such a shifting/walking condition in the RFC. Pl.'s Br. at 4; R. 325 (Dr. Puckett checking the "Yes" box when asked about the need for these working conditions). The undersigned disagrees.

In discussing Dr. Puckett's opinion, the ALJ specifically noted Dr. Puckett's indication of a need for a job with a shifting/walking condition. R. 12 (noting the opinion regarding Plaintiff's "shifting and walking positions at will"). The ALJ expressly afforded "great weight" to Dr. Puckett's medical opinions as set forth in the MSS but stated that the MSS intruded, at least in part, on issues reserved solely to the Commissioner. R. 12; *see* 20 C.F.R. §§ 416.927(d), .945. Thus, to the extent Dr. Puckett opined as to Plaintiff's RFC—i.e., "the *most* [he] can still do despite [his] limitations"— as opposed to offering a statement "that reflect[s] judgments about the nature and severity of [Plaintiff's] impairments" (such as symptoms, diagnosis, abilities, and restrictions), the ALJ did not err in distinguishing such nonmedical statements from the remainder of the MSS and assessing them accordingly. *See* 20 C.F.R. §§ 416.927(a)(2), (d), .945(a)(1) (emphasis added); *Howard*, 379 F.3d at 949 ("The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."); *cf. Howard*, 379 F.3d at 949 ("We also reject claimant's implicit argument that there must be specific, affirmative, medical evidence as to each requirement of an exertional work level before an ALJ can determine RFC within that category.").

In any event, Dr. Puckett also stated that Plaintiff could sit or stand for "[m]ore than 2 [h]ours" "*at one time*" and could sit, stand, or walk for at least 6 hours in an 8-hour work day "with normal breaks"—with each of those conclusions being the maximum durational choice available on the MSS form. R. 325. The state consulting physicians similarly opined that Plaintiff could stand/walk and sit, with normal breaks, for about six hours in an eight-hour work day and did not conclude that any additional limitation should be made for shifting/walking. *See* R. 244, 331; *cf.* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Plaintiff himself reported that his condition did not affect his ability to sit, stand, walk, squat, bend, reach, or climb stairs. R. 161. In sum, the ALJ's discussion of the MSS was adequate, and the ALJ's RFC finding is supported by substantial evidence. Because the ALJ's failure to incorporate the shifting/walking working conditions indicated by the MSS does not undermine the ALJ's RFC finding, reversal is not required on this basis.

- *The Degree to Which Plaintiff Can Tolerate Work Stress*

Plaintiff further asserts that Dr. Puckett limited Plaintiff to "only moderate stress jobs" and the ALJ erred by not including that limitation in the RFC. Pl.'s Br. at 4. Plaintiff's description is somewhat misleading: the MSS asked, "To what degree can your patient tolerate work stress?" In response, Dr. Puckett checked the box stating "Capable of moderate work stress – *normal work*." R. 327 (emphasis added).

As a threshold matter, to the extent this opinion of Dr. Puckett's went toward determination of Plaintiff's ability to work or his RFC, rather than the nature and severity

11

of Plaintiff's impairments, the opinion was made on a matter solely reserved to the Commissioner. *See* 20 C.F.R. §§ 416.927(a)(2), (d), .945(a)(1). Next, Plaintiff fails to offer any basis for finding that the capability to handle normal work stress is inconsistent with the demands of medium-exertion work. The undersigned will not speculate or develop appellate arguments on her behalf. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003). Finally, Dr. Puckett also opined that Plaintiff's emotional factors did not contribute to the severity of his symptoms and functional limitations and that Plaintiff had no psychological conditions affecting his physical condition. R. 324, 325. Plaintiff has not shown that the RFC lacks sufficient support with respect to this work-stress issue (or any of the others, alone or in combination), and reversal is not warranted.

- *Inclusion of Plaintiff's Severe Impairment in the RFC*

Plaintiff concludes his brief with an isolated suggestion that the ALJ's RFC did not include consideration of Plaintiff's impairment of status-post cervical fracture. *See* Pl.'s Br. at 4-5. To obtain judicial review, it is insufficient to simply "suggest dissatisfaction" or merely mention an issue in the context of another matter. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994); *Devers v. Colvin*, No. CIV-12-1285-D, 2014 WL 1272108, at *1, *5 (W.D. Okla. Mar. 27, 2014). Further, Plaintiff's vague contention is meritless: rather than being ignored, Plaintiff's cervical fracture was the *only* impairment found to be severe and is specifically addressed, along with resulting limitations, for purposes of determining the RFC. R. 12-14; *see* 20 C.F.R. § 416.920(a)(4)(ii), (c), (e).

CONCLUSION

The ALJ adequately discussed Dr. Puckett's medical opinions contained in the MSS. The ALJ's conclusion that Plaintiff could perform a full range of medium work is consistent with the medical evidence, is not "overwhelmed by other evidence in the record," and does not "constitute[] a mere conclusion." *See Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (internal quotation marks omitted). Because the ALJ's RFC finding is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," reversal is not warranted. *See id.*

RECOMMENDATION

Having reviewed the record, the transcripts, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 13, 2015. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 27th day of February, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE